ROSE *v.* DESMOND CHARCOAL & CHEMICAL CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—RECOVERY —SUSPENSION OF COMPENSATION.

On petition of employer to cease payments to an injured employee, alleging complete recovery, where the evidence tends strongly to prove that claimant has recovered, his refusal to submit to an X-ray examination, *held,* to demand the application of section 19, part 2, of the workmen's compensation act (2 Comp. Laws 1915, § 5449), suspending his right to compensation.

Certiorari to Industrial Accident Board. Submitted April 17, 1919. (Docket No. 71.) Decided May 29, 1919.

Henry J. Rose presented his claim for compensation against the Desmond Charcoal & Chemical Company for injuries received in defendant's employ: On petition of defendant and the General Accident, Fire & Life Assurance Corporation, Limited, insurer, to cease payments. From an order denying the petition, defendants bring certiorari. Reversed, and order set aside.

*Kerr & Lacey,* for appellants.
*Willard J. Banyon,* for appellee.

OSTRANDER, J. Henry J. Rose, an employee of the Desmond Charcoal & Chemical Company, was injured. An agreement for compensation was made, was approved by the industrial accident board, and, performing it, claimant has been paid from January 5, 1915, the date of injury, to June 11, 1918, a period of 179 weeks. In June, 1918, the employer and the insurance company filed with the industrial accident board a petition, as follows:

The question of duty of injured employee to submit to examination is discussed in a subdivision of notes in L. R. A. 1916A, pp. 160, 161; L. R. A. 1917D, 174.

"That on January 5, 1915, and for some time prior thereto, one Henry J. Rose was in the employ of the Desmond Charcoal & Chemical Company; that on the last named date, to-wit: January 5, 1915, said claimant, while in the employ of said respondents and petitioners, at what is commonly known as Carter's Siding, in the county of Benzie, and State of Michigan, received an accidental injury as follows: While wheeling ashes, tripped on plank across railroad track, and fell, tearing ligaments on knee cap.

"That in due course thereafter, an agreement in regard to compensation was duly executed by and between the respective parties, whereby said petitioners were to pay compensation to said claimant at the rate of 6.125 per week, during period of disability in accordance with the provisions of the workmen's compensation law, so-called; that in accordance with said agreement, your petitioners have paid or caused to be paid to said claimant, compensation in accordance with said agreement from the date of injury, to-wit: January 5, 1915, to June 11, 1918.

"Your petitioners respectfully represent that through duly authorized agents and representatives they have caused a careful and complete investigation to be made, in order to determine whether or not claimant is entitled to further compensation, because of said accidental injury. Petitioners represent that they are informed and believe, and therefore expressly charge the truth to be that the injuries received by said claimant, as a result of accident on the date above designated were not of such a serious nature as to cause disability, during the period for which compensation has been paid, and that said claimant has fully recovered from the effects of said accidental injury, and is not entitled to receive further compensation from petitioners.

"Petitioners respectfully represent that for some considerable period prior to March 16, 1918, they were negotiating with said claimant with reference to making arrangements whereby claimant would report to a competent, disinterested, and highly qualified physician and surgeon, at either Chicago, Illinois, or Detroit, Michigan, for the purpose of having a careful, complete, and thorough physical examination made, to

determine the exact physical condition of said claimant; that said petitioners agreed with said claimant to advance to him and defray all expenses incidental to making either the trip to Chicago, Illinois, or Detroit, Michigan, for the purpose of being examined and attended, or both, and that all expenses, including the charge of physician and surgeon would be paid by said petitioners; that said claimant on several occasions agreed with said petitioners that he would report at the time and place designated by petitioners for such medical attention as was deemed necessary, and requested your said petitioners to advance to him money to defray expenses. Petitioners state, however, that on each and every occasion said claimant at the last moment offered some excuse, and thus failed to comply with his many and divers agreements with your respondents and petitioners with reference to medical services.

"Your petitioners further represent that on the 16th day of March, 1918, Dr. Arche C. Hall, a duly qualified physician and surgeon, licensed to practice his profession as such, with offices in the David Whitney Building, Detroit, Michigan, at the request of your said petitioners, the General Accident, Fire & Life Assurance Corporation, Limited, called at the then residence of said claimant, to wit: 192 Ninth street, Benton Harbor, Michigan, and made a physical examination; that on April 30, 1918, said doctor at the request of petitioner, the insurance company, submitted a written detailed report, indicating the result of said physical examination, a copy of which report is included in this petition and is attached hereto, being marked as Exhibit 'A.'

"Your petitioners also represent that prior to April 30, 1918, and on or about April 18, 1918, said Dr. Hall made an oral report to your said petitioners' representatives, to wit: Kerr & Lacey, with offices 1719 Dime Bank Building, Detroit, Michigan, which said oral report was substantially the same as indicated by Exhibit 'A.' That said attorneys, acting for and in behalf of your petitioners, wrote the industrial accident board under date of April 18, 1918, in accordance with copy of said letter, which is made a part of this petition, and which is attached hereto, and marked Exhibit 'B.'

"That some time thereafter, on or about May 5, 1918, said petitioners, through their said attorneys, Kerr & Lacey, received a letter from the industrial accident board which is dated May 4, 1918, and which is made a part of this petition, being hereto attached, and marked Exhibit 'C.'

"In view of the facts and circumstances thus presented, your petitioners respectfully represent that they should be relieved from further payment of compensation to said claimant, on and after the 11th day of June, 1918, for the following reasons:

"1. Said claimant Henry J. Rose has fully recovered from the effects of accidental injury received while in the employ of respondent and petitioner, Desmond Charcoal & Chemical Co. under date of January 5, 1915.

"2. That if it should be determined that the proofs which said respondents and petitioners are able to submit in support of this petition are not sufficient to establish to a certainty the exact physical condition of said claimant, that said respondents and petitioners should be relieved from making further payments of compensation, because of the unreasonable conduct and attitude of said claimant in refusing to consummate arrangements whereby further medical attention could be given at the expense of said respondents and petitioners, including careful and thorough physical examination by some disinterested and highly qualified physician and surgeon, and also such X-ray examinations as were considered necessary by such physician and surgeon, to make a proper diagnosis of the case.

"3. Respondents and petitioners have acted with fairness and in good faith, with reference to the selection of a physician and surgeon to make proper physical examination, including X-ray pictures, to determine the true situation from a medical standpoint; that the attitude of said claimant in his refusal to accept proposition submitted by respondents and petitioners, as to further medical attention, or to co-operate in the selection of a disinterested and qualified physician and surgeon, is unreasonable.

"Wherefore your petitioners pray:

"A. That a copy of this petition as filed be forwarded to said claimant, and that he be directed to

answer the same, paragraph for paragraph, and that upon his failure so to do, or upon his admission that the allegations therein contained are true, that the same be treated as such, and that said respondents and petitioners be relieved from further payment of compensation.

"B. That if said claimant refuses or neglects to answer the allegations contained in said petition, or in answering the same denies the allegations therein contained, or if it is the desire of the industrial accident board that proof be submitted to substantiate the allegations in said petition, that said respondents and petitioners be allowed a reasonable time within which to submit testimony in the form of depositions, of various doctors and witnesses, whose knowledge in the premises is important in the determination of the issues.

"C. In the event it is the desire of the industrial accident board that proofs be submitted in the form of deposition, that after the receipt thereof, the matter be set for hearing before the full board, at its offices in the city of Lansing, in accordance with the rules and practice of said board in such cases made and provided.

"D. That upon hearing of said cause, an order be entered by the industrial accident board relieving said respondents and petitioners from further payments of compensation.

"E. That respondents and petitioners may have such other and further relief in the premises as is agreeable to equity and good conscience, and as is also just and proper."

Various papers were attached to the petition, as referred to therein. Later, depositions were taken by respondents upon notice and submitted to the board. The board requested claimant to report to a physician in his city (Benton Harbor, Michigan) for a medical examination. The examination was made and reported by the physician to the board. Finally, in October, 1918, the board made its order (the one appealed from), which reads:

"A petition having been filed by respondents in the above entitled cause, praying for reasons therein set forth that they be permitted to cease payments of compensation to said applicant, and the same having come on to be heard before the board on July 9, 1918, and due consideration having been had of the facts and circumstances of the case; it is ordered and adjudged that said petition be and the same is hereby denied, and said applicant is entitled to receive and recover compensation from said respondents as per the agreement in the files from the date of the last payment, March 11, 1918, to the date of the filing of said petition, June 8, 1918. It is further ordered that payments be suspended during the period when applicant is receiving the same or higher wages than he was receiving at the time of the accident, and should there be a diminution of wages he shall be entitled to receive compensation at the rate of one-half the difference between the wages he was receiving at the time of the accident and that which he is able to earn thereafter, all in accordance with the terms of the workmen's compensation law."

Setting up a brief history of the case, the petition for the writ of certiorari assigns as error:

"1. There is no testimony upon which the order of the industrial accident board can be based.

"A. Testimony submitted in support of petition to be relieved from further payment of compensation was conclusive, and to the effect that claimant had fully recovered from the effects of accidental injury.

"B. Report of Doctor B. G. Watson, the impartial physician, selected by the industrial accident board to make careful and complete examination, was also to the effect that claimant had fully recovered from the effects of accidental injury.

"2. The action of the industrial accident board in entering the order of October 26, 1918, is contrary to the terms and provisions of the workmen's compensation law, so-called."

The printed record in this court contains 153 pages, a large part of which is made up of matter sent up over the objection of plaintiffs in certiorari. What

plaintiffs in certiorari say is that such evidence as they have submitted to the board, and such as the board ordered to be taken, points conclusively to the fact that claimant has recovered from the effects of his injury; if there is any doubt about it, then, in view of the showing made, payments should be suspended until a further complete X-ray examination of claimant's limb is made. In other words, plaintiffs in certiorari assert that claimant has recovered and is, in any event, recalcitrant because he will not, at the expense of the employer, present himself for such complete and thorough examination as will demonstrate his present condition. As affecting these questions, the larger part of the return is of no account, while the printing of it entails an unnecessary expense upon the interested parties.

Whether claimant's recovery is established depends upon the evidence of his present condition. Whether evidence is lacking and can be obtained only by cooperation of the claimant, and he refuses to submit to examination, must be determined by the evidence relating to those subjects. Very little more than such evidence needed to be returned with the writ,

We have read the evidence upon the subject of claimant's injury and condition,—the medical testimony and his own. We think it cannot be said that it is conclusive, *establishing* the fact that he has recovered from his injury. It must be said there is some, if slight, evidence supporting a contrary conclusion. It tends strongly to prove that claimant is recovered. But the doubt which it leaves in the mind is a small one, and the refusals of claimant to submit his person to expert X-ray examination demand, we think, application of section 19, part 2, of the workmen's compensation law (2 Comp. Laws 1915, § 5449), and such application will suspend his right to compensation. This, in our opinion, is the order which the

board ought to have made in the premises. We do not intimate that it is our opinion that he has not had expert X-ray examination, which was some time in the year 1915. But it is a fair consensus of the opinions expressed by the medical witnesses that any doubts now existing about his condition may be resolved by an expert X-ray examination made presently. Claimant has only to give his time in order that such examination may be made. Order set aside.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.