SAUCH v. STUDEBAKER CORPORATION.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—RIGHT OF
EMPLOYER TO EXAMINATION OF INJURED EMPLOYEE ABSOLUTE.

An employer is entitled to an order suspending payments
to an injured employee where the latter fails to appear
before a physician for examination in this State as pro-
vided for by the workmen's compensation act (2 Comp.
Laws 1915, § 5449), and said right is not defeated by the
fact that the employee is prevented from appearing by
reason of his having been deported to a foreign country
because he was suffering from tuberculosis when he en-
tered the United States; the right to said examination
granted the employer by the statute being without any
exceptions whatever.[1]

Certiorari to Department of Labor and Industry.
Submitted April 8, 1925.   (Docket No. 36.)   De-
cided October 1, 1925.

Antonio Sauch presented his claim for compensation
against the Studebaker Corporation for an accidental
injury in defendant's employ:   On petition of defend-
ant to suspend payments.   From an order denying
the petition, defendant brings certiorari.   Reversed,
and order of suspension entered.

*Joseph Jirasek*, for appellant.

*Walter M. Nelson* and *Harry L. Diehl*, for appellee.

STEERE, J.   Defendant appeals by certiorari for re-
view and reversal of an order made by the commission
of the department of labor and industry denying its
application for suspension of an award of weekly com-
pensation to plaintiff, Antonio Sauch, for injuries he

[1] Workmen's Compensation Acts, C. J. § 151.
On duty of injured employee to submit to an examination,
under workmen's compensation acts, see note in 6 A. L. R. 1270.

sustained in an industrial accident while in defendant's employ.    On April 17, 1923, Sauch was an employee in defendant's automobile factory and later gave notice to defendant of a claim for an accidental injury to him on that day arising out of and in the course of his employment, which he described as "Injury to the left chest caused by hitting tree which he was putting in a lathe."    This was denied by defendant and he thereafter made application to the commission for an award of compensation for an industrial accident on that day arising out of and in the course of his employment by defendant, his claim being that the accident aggravated an · existing condition of tuberculosis.

Hearing was thereafter had before a deputy commissioner who, on December 1, 1923, awarded plaintiff compensation at the rate of $14 per week for a period of disability from June 25th to December 3, 1923, amounting to $322 and $14 per week thereafter during total disability.    Defendant filed a claim for review before the full commission which was disallowed because not received by it within 10 days from the decision of the deputy.    An application for extension of time was denied and appellant thereafter paid to plaintiff the amount awarded, continuing the weekly payments for several months, and on March 5, 1924, made application for permission to stop payment, alleging as its reason that "Applicant is not now suffering from, or is not in any way incapacitated as a result of the injury sustained while in the employ of the respondent," which on hearing before a deputy commissioner was denied.

On March 28, 1924, appellant mailed plaintiff a registered letter directed to his last known address which was in Detroit, also a copy to his attorney, requesting him to be present at the office of Dr. W. G. Patterson, 48 Rowena street, Detroit, Michigan, on

April 3, 1924, for a physical examination at appellant's expense, under the provisions of section 19, part 2 of the workmen's compensation act (2 Comp. Laws 1915, § 5449), which is as follows:

"SECTION 19. After an employee has given notice of an injury, as provided in this act, and from time to time thereafter during the continuance of his disability, he shall, if so requested by the employer, or the insurance company carrying such risk, or the commissioner of insurance, as the case may be, submit himself to an examination by a physician or surgeon authorized to practice medicine under the laws of the State, furnished and paid for by the employer, or the insurance company carrying such risk, or the commissioner of insurance, as the case may be. The employee shall have the right to have a physician provided and paid for by himself present at the examination. If he refuses to submit himself for the examination, or in any way obstructs the same, his right to compensation shall be suspended, and his compensation during the period of suspension may be forfeited. Any physician who shall make or be present at any such examination may be required to testify under oath as to the results thereof."

Plaintiff did not appear for physical examination at the time and place named in defendant's letter of request, nor directly make any answer to said letter, although about that time plaintiff's attorney told defendant's attorney that the Federal immigration authorities had deported plaintiff to Spain, and on April 2, 1924, wrote the commission of the department of labor and industry he had been advised by the inspector of the immigration office at Detroit that plaintiff "had sailed from New York on March 22d on the S. S. 'President Roosevelt' bound for Barcelona, Spain." On May 27, 1924, defendant made application to the commission for suspension of compensation based on plaintiff's failure to present himself for examination as requested. Hearing was had on said

petition June 20, 1924, before a deputy commissioner who denied the same.     On appeal to the full commission the denial of the deputy was affirmed.     The gist of the commission's reasons for so ruling is indicated by the following excerpt from its return:

"2. That had applicant left the United States of his own volition we would have placed the burden of proof upon him, but as applicant was deported we think the burden still rests upon the petitioner and respondent has been instructed as to the method of proof by letters rogatory, but has not availed itself of the opportunity;

"3. That the agreement is in full force and effect until set aside or modified by competent proof."

The only proof of any word on the subject directly received from plaintiff is a brief letter written in imperfect English from Barcelona, Spain, to his attorneys, which they received April 30, 1924, and produced at the hearing.     It was apparently dated on the 17th of that month, gives his address with street and number in Barcelona, briefly tells of his arrival there and that he is a little better, mentions "payments" and asks them to send him money or check as soon as possible "because my position is not esplendid."     While there is no official proof of his deportation or the reason therefor, it was conceded by defendant's counsel that such was the case, and the statement of plaintiff's counsel before the commission that he was not deported for any crime, but it was found by the physicians of the immigration department within the time he was subject to deportation as being tubercular, that he manifested signs of that affliction which they inferred was present when he entered the country and he was deported for that reason was not denied.

No authorities are cited by counsel on either side. Both state facts urged as showing equities for their respective sides which may have been shown at the

hearing but of which there is no evidence in the record beyond the fact that plaintiff was deported because his immigration was found to have been unlawful.

The record consists only of the petition for certiorari, return thereto and various written exhibits with portions of the discussion between court and counsel at the time of the hearing. It shows plaintiff was legally requested by registered letter properly mailed to appear before a designated physician for physical examination at a specified time and place in compliance with the cited provision of the workmen's compensation law. The letter was mailed to his last known address, and a copy was sent to his attorney. The place designated for the examination was in the city of Detroit, Michigan, where defendant's factory in which he had been employed was located, where he resided when he claimed to have been injured, when he obtained an award for damages, and while there had regularly received payment pursuant to the award under the Michigan compensation law. Where or when he became a denizen of the United States does not appear, but he could not have been deported under the immigration law unless it was found by the deporting officers that the cause for which he was deported existed when he entered the country and his entry was therefore illegal.

It is not denied that his absence overseas in a foreign country and failure to comply with the request to appear for medical examination was owing to his arrest and deportation by the Federal authorities, but nevertheless he did not submit himself to any examination as requested and thereby necessarily obstructed and prevented the same. The statute does not as it reads imply that the obstruction must be wilful. The employer's rights under the statute would be equally obstructed or defeated whether it was or not. Conceding that he was willing to and would have appeared

for examination as requested had it been possible, the underlying cause of prevention was the fact that his illegal immigration and residence in this country laid him liable to arrest and deportation by the Federal authorities.

The section involved here, requiring an employee claiming or receiving compensation for an industrial accident to submit himself "to an examination by a physician or surgeon authorized to practice medicine under the laws of this State" when properly requested by his employer or the insurance company carrying the risk, distinctly provides if he refuses to so submit himself to "or in any way obstructs" such examination his right to compensation *"shall be suspended,"* and his compensation during the period of suspension *"may be forfeited"* (italics are ours). The statute contains no exceptions or qualifying language. So far as any intimations are indicated it suggests a limit of territorial jurisdiction. It would scarcely be claimed that if defendant subsequent to the award had, for any reason, located in some foreign country and plaintiff remained here this commission would or could order suspension or forfeiture of the latter's compensation on proof of his failure to respond to defendant's request that he submit himself in some foreign city, where it was located, for examination there by a physician or surgeon authorized to practice medicine in Michigan. It would seem that if any extraterritorial jurisdiction could be read into the law the rights of the parties under it should be correlative.

Little assistance is afforded by any decisions touching the subject which we are able to locate in this or other jurisdictions. A somewhat similar provision of the English compensation act (60-61 Vict. cap 37) provides, as our act apparently implies, that if the employee refuses to submit to or in any way obstructs such requested examination his right to receive weekly

compensation "shall be suspended until such examination has taken place." Construction of our act as so implying is found in *Rose* v. *Chemical Co.*, 206 Mich. 294. There the employee though agreeing more than once to appear for a requested examination later offered excuses for not complying and repeatedly failed to appear, and the employer made application to the industrial accident board for an order relieving it from further payments with a general prayer for relief, which was denied. This court held that under said section 19, part 2 of the act such application suspended the employee's right to compensation and the board should have so ordered, with the concluding suggestion that "claimant has only to give his time in order that such examination may be made." While not directly in point upon the issue raised here that case lays down the rule that *prima facie* at least, such application properly verified entitles the employer to an order of suspension.

There is no machinery in our statute appropriate to the situation presented here, and nothing in its scope suggesting an intent to cover such a case. It gives the employer the right to a medical examination of the employee by a physician or surgeon authorized to practice medicine under the laws of this State, which require that he be examined and licensed by the State board of registration in Michigan. The act does not comprehend in any of its terms the possibility of the employee being absent in a foreign country. It confers upon the commission no extra-territorial powers and neither the latter nor the courts have any authority to legislate on the subject. Beginning with plaintiff's unlawful entry into this country, circumstances developed where by reason of his absence in Spain it became impossible for the employer to have the medical examination the law entitled it to, amounting in contemplation of the statute to an obstruction of

the same, and entitling defendant on the case as then presented to the order of suspension petitioned for.

The order of denial must be set aside, and one of suspension granted.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.